UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CINDY CAPOTE,

          Plaintiff,

    v.

CSK AUTO, INC.,

          Defendant.

Case No.  12-cv-02958-JST

**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: ECF No. 37

       In this disability discrimination case, Plaintiff Cindy Capote asserts claims for violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, *et seq.* by virtue of disability discrimination, failure to reasonably accommodate, failure to engage in the interactive process, retaliation, and failure to prevent discrimination against her former employer, Defendant CSK Auto, Inc. ("CSK").  In addition, she asserts a common law claim for wrongful termination in violation of public policy.  CSK moves for summary judgment on each of Plaintiff's claims.  ECF No. 38.  Plaintiff cross-moves for summary judgment on her claims for failure to engage in the interactive process and failure to reasonably accommodate.

## I.    BACKGROUND[1]

       CSK is a retail distributor of automotive parts.  It was acquired by O'Reilly Automotive, Inc. in 2008.  Crowe Decl., ECF No. 40 ¶ 8.

       CSK hired Plaintiff as a "delivery specialist" at its San Mateo, California store on February 26, 2008.  Capote Decl., ECF No. 47 ¶ 1.  Delivery specialists drive company vehicles to deliver to or pick up from customers automotive parts and products.  Crowe Decl., ECF No. 40, Ex. B.  The job description for an O'Reilly Auto Parts Delivery Specialist lists several "Physical

---

[1] The parties' various evidentiary objections are overruled.

United States District Court
Northern District of California

1   Requirements (in 8 hour workday)," including the ability to sit for five to six hours, bend and

2   stoop for five to six hours, lift twenty-six to sixty pounds for one to two hours, and lightly and

3   firmly grasp for three to four hours.  Id.

4        A month after she was hired, in March 2008, Plaintiff was involved in a motor vehicle

5   accident while operating a CSK vehicle during the course of her employment.  Scheffy Decl., ECF

6   No. 39, Ex. A, Capote Dep. 173:21–23; Enloe Decl., ECF No. 41 ¶ 5.  Plaintiff suffered neck and

7   back injuries that precluded her from working.  While recovering, Plaintiff provided CSK with

8   periodic reports from her physicians.  She returned to work briefly, but did not return on a long-

9   term basis until April 2009, after her physician cleared her for work with certain limitations.

10  Enloe Decl. ¶ 15; Ex. G.  At that time, CSK's Workers' Compensation Coordinator Tracy Stuart

11  wrote to Regional Senior Human Resources Manager Dave Vanden Bos regarding

12  accommodations CSK would be willing to make for Plaintiff.  Stuart wrote: "[W]e still need to

13  place her in a store in order to get her back to work.  She could answer phones, pull parts, dust

14  shelves, file, greet customers, front shelves, etc."  Enloe Decl. ¶ 16; Ex. H.

15       A "Notice of Offer of Temporary Modified or Alternative Work" sent to Plaintiff by her

16  workers' compensation claims examiner states that CSK was offering Plaintiff a position with

17  "temporary-transitional" duties.  The Notice states: "The doctor may later determine that you will

18  have permanent restrictions.  At that point your employer will make a further decision on the

19  availability of work based on those permanent restrictions."  Scheffy Decl., Ex. G.  The temporary

20  position was a modified "cashier" position that O'Reilly Automotive had previously eliminated

21  after acquiring CSK.  The position paid the same rate Plaintiff received prior to her injury, in the

22  same store she previously worked.  The Notice stated that Plaintiff's "temporary work restrictions

23  are: No repetitive bending or stooping, driving longer than 30 minutes at a time, should change

24  positions from sitting to standing every 30 minutes as necessary, avoid lifting more than 20 lbs."

25  Id.  In order to address these limitations, CSK modified the cashier position in several ways,

26  including having other employees lift merchandise over twenty pounds and not requiring Plaintiff

27  to restock shelves, clean windows, or sweep floors.  Id.

28       After a leave of absence from November 2009 to April 2010 due to a non-occupational

United States District Court
Northern District of California

United States District Court
Northern District of California

accident, Plaintiff returned to work and continued in the modified "cashier" position without incident until December 2010. While in that position, Plaintiff never asked to be placed in another position. Capote Dep. 85:21–86:1.

On December 23, 2010, Store Manager Cesar Mendoza informed Plaintiff that CSK was placing her on an unpaid leave of absence. Mendoza Decl., ECF No. 42 ¶ 4. The circumstances surrounding how she was placed on leave are a subject of dispute between the parties. CSK's Transitional Modified Duty Early Return to Work policy limits employees to 180 days of light-duty status. Relying on this policy, CSK maintains it placed Plaintiff on a leave of absence because her condition had not improved, "to help her recover." Enloe Decl. ¶ 18. In her declaration, Plaintiff states that Mendoza told her "Corporate" had called him to tell him the modified position was no longer available. According to Plaintiff, Mendoza told her "off the record" that he believed Plaintiff was being placed on a leave of absence because she had sued the company, or because her lawyer had contacted the corporate office about discrimination; at that time, Plaintiff had not in fact sued CSK, but she had sued the other driver involved in the March 2008 motor vehicle accident, and she had recently concluded a jury trial in that case. Capote Decl. ¶ 11. Plaintiff also states that Mendoza told her she could not return to work until she could get a "100% release" from her physician "with no restrictions whatsoever." Id. Plaintiff has submitted an unverified two-page typewritten note that she declares she wrote contemporaneously, in which she describes her encounter with Mendoza in a similar manner. Capote Decl., Ex. C. Mendoza disputes this account. Mendoza Reply Decl., ECF No. 65 ¶ 7.

Mendoza asked Plaintiff to forward work status reports from her physicians to CSK as she had done in the past. Mendoza Decl. ¶ 5. On December 27, 2010, Plaintiff wrote a letter to CSK in which she stated: "Please let me know if there is anything I can do to continue to work here." Capote Decl., Ex. D. Enclosed with the letter was a work status report that changed Plaintiff's lifting capacity to twenty-five pounds on four eight-hour days per week. On January 3, 2011, Plaintiff submitted another work status report that was substantially the same as the prior one. With that report, Plaintiff inquired: "I would like to know my current status, have I been terminated?" Capote Decl., Ex. E. On January 27, 2011, Plaintiff sent CSK a letter reviewing the

1   history of her employment.  She reiterated that Mendoza told her she could not return to work

2   until she no longer had limitations.  She again asked: "Please let me know if I have been

3   terminated or placed on some type of leave, I'd like to be notified of my current employment

4   status."  Capote Decl. Ex. F.  Finally, on March 25, 2011, Plaintiff wrote another letter, stating:

5   "As you know, I have not received anything from the company since being sent home on

6   December 23, 2010," and inquiring again as to the status of her employment.  Capote Decl., Ex.

7   G.  There is no evidence that CSK ever responded to any of these inquiries.  In its motion, CSK

8   simply states that "CSK did not receive any additional work status reports from Plaintiff's

9   physicians after January 2011.  Therefore, she remained on a leave of absence."  ECF No. 38 at 6.

10      CSK Leave of Absence Coordinator Christini Cummings testified that she received a

11   notice of permanent work restrictions related to Plaintiff in September 2011 from Plaintiff's

12   workers' compensation claims adjuster.  Scheffy Decl., Ex. E, Cummings Dep. 19:20–20:1.

13   Cummings testified that "[w]hen human resources is made aware that there's a permanent

14   restriction . . . . we do try to engage in an interactive discussion with the employee, and we also

15   engage in fact-finding to determine if we are actually able to accommodate a restriction once

16   we're given those with our field management."  Id. 21:3–22:8.

17      Cummings first endeavored to determine from Plaintiff's field managers whether Plaintiff

18   could return to work, based on the permanent restrictions, in her former position or an alternate

19   position with accommodations.  Id. 22–27.  She attempted to communicate with Plaintiff by

20   leaving a voicemail on November 17, 2011.  Id. 62:17–63:2.  On November 25, 2011, Cummings

21   sent a letter to Plaintiff via certified mail inviting Plaintiff to participate in an interactive process to

22   determine whether CSK could accommodate Plaintiff's restrictions.  The letter states Plaintiff had

23   not returned Cummings phone call, and set a deadline for Plaintiff to respond: December 7, 2011.

24   Crowe Decl., Ex. D.  A tracking report from the United States Postal Service states the letter

25   arrived at its destination on December 1, 2011.  Crowe Decl., Ex. E.  Plaintiff did not respond to

26   Cummings' attempts to communicate.  On December 14, 2011, CSK sent Plaintiff a letter

27   informing her of the termination of her employment.  The letter summarizes Plaintiff's work

28   restrictions at that time: "no lifting more than 25 pounds, no reaching while in a crouching

United States District Court
Northern District of California

4

1    position, and alternate standing and sitting every 30 half hour[sic]." Crowe Decl., Ex. F. The

2    letter continues: "We invited you to participate in the interactive process with us to determine if a

3    reasonable accommodation would allow you to perform the essential functions of your current

4    position or an alternate open position. Since you did not contact us to participate in the interactive

5    process, we proceeded to evaluate accommodation options on our own." Id. CSK concluded that

6    there was no "effective, reasonable accommodation which would allow you to perform the

7    essential functions of your position." Id.

8         Plaintiff claims she received the December 2011 termination letter, but not the November

9    2011 interactive process letter. She produced in discovery a postal service tracking report

10   indicating the interactive process letter was unclaimed as of January 5, 2012. Scheffy Decl., Ex.

11   K. At her deposition, Plaintiff testified she never saw the interactive process letter. Capote Dep.

12   102–104.

13        Throughout this time, Plaintiff had been acquiring representation and initiating

14   proceedings before the California Department of Fair Employment and Housing. She received a

15   right-to-sue letter on November 16, 2011. Scheffy Decl., Ex. M. Plaintiff's counsel sent CSK a

16   letter dated December 13, 2011, via U.S. Mail, notifying CSK of Plaintiff's intent to sue, and

17   attaching a copy of the right-to-sue letter. Crowe Decl., Ex. G. CSK claims it received the letter

18   "after CSK terminated Plaintiff's employment." Crowe Decl. ¶ 15.

19        Plaintiff filed this action on June 6, 2012. Compl., ECF No. 1.

20   **II.    LEGAL STANDARD**

21        Summary judgment is proper when a "movant shows that there is no genuine dispute as to

22   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

23   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

24   citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A

25   party also may show that such materials "do not establish the absence or presence of a genuine

26   dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.

27   Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable

28   fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–

United States District Court
Northern District of California

5

49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  Id. at 248.  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000).

The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id.  "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint."  Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## III.    ANALYSIS

Plaintiff alleges she was the subject of disability discrimination by virtue of CSK's failure to make a reasonable accommodation, its placing her on a leave of absence, and its ultimate decision to terminate her employment.  She argues that CSK violated several provisions of FEHA when it placed her on a leave of absence in December 2010.  Plaintiff argues that CSK should

6

1    have instead engaged in the interactive process to determine whether there were reasonable

2    accommodations it could make to enable her to continue working.

3        **A.    Failure to Engage in Interactive Process**

4        FEHA prohibits an employer from "fail[ing] to engage in a timely, good faith, interactive

5    process with the employee or applicant to determine effective reasonable accommodations, if any,

6    in response to a request for reasonable accommodation by an employee or applicant with a known

7    physical or mental disability or known medical condition."  Cal. Gov. Code § 12940(n).

8        "The interactive process requires communication and good-faith exploration of possible

9    accommodations between employers and individual employees with the goal of identifying an

10   accommodation that allows the employee to perform the job effectively.  For the process to work

11   both sides must communicate directly, exchange essential information and neither side can delay

12   or obstruct the process."  Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 984–

13   85 (2008) (internal quotation and alterations omitted).  "[T]he fact that an employer took some

14   steps to work with an employee to identify reasonable accommodations does not absolve the

15   employer of liability under section 12940(n).  If the employer is responsible for a later breakdown

16   in the process, it may be held liable."  Id.

17       The parties' motions reflect their widely divergent views of CSK's interactive process.

18   CSK moves for summary judgment on the ground that Plaintiff failed to respond to CSK in late

19   2011 after CSK learned Plaintiff's restrictions were permanent.  Plaintiff cross-moves for

20   summary judgment on her interactive process claim on the ground that CSK unilaterally

21   terminated the interactive process in December 2010 when it placed her on a leave of absence, and

22   did not communicate with her again for nearly eleven months.

23       Both motions require the Court first to address the leave of absence CSK imposed on

24   Plaintiff.  CSK explains the leave of absence as follows: "When Plaintiff failed to show significant

25   improvement with regard to her occupational injury, CSK followed its Return to Work policy and

26   placed Plaintiff on a leave of absence to allow her time to recover.  Though a leave of absence

27   may not have been Plaintiff's preferred accommodation, it was a reasonable one."  ECF No. 60 at

28   12.  CSK does not dispute that Plaintiff wrote to CSK repeatedly requesting to return to work and

1   asking "if there is anything I can do to continue to work here." Capote Decl., Ex. D. Nor does

2   CSK dispute that it was aware of Plaintiff's disability and that Plaintiff provided CSK with her

3   work status reports detailing her restrictions. In short, CSK concedes that it unilaterally

4   terminated the interactive process in December 2010, but argues that it was legally entitled to do

5   so because "Plaintiff willfully ignored CSK's attempts at the interactive process and thereby acted

6   in bad faith." ECF No. 38 at 18.

7        The Court will deny Defendant's motion for summary judgment as to Plaintiff's claim for

8   failure to engage in an interactive process. Viewing the evidence in the light most favorable to

9   Plaintiff, a jury could conclude that it was CSK, not Plaintiff, who "willfully ignored [Plaintiff's]

10  attempts at the interactive process," by failing to respond to Plaintiff's several inquiries about her

11  work status during her leave of absence or make any effort to reasonably accommodate her

12  disability. See Nadaf-Rahrov, 166 Cal. App. 4th at 989 (employer's "decision to terminate

13  Nadaf–Rahrov without advance warning or further discussion was unreasonable and caused a

14  breakdown in the interactive process, i.e., because it was unreasonable for Neiman Marcus to

15  determine unilaterally that Nadaf–Rahrov could not perform any available vacant position and

16  would not be able to do so in the foreseeable future, Neiman Marcus needed to engage in further

17  discussion with Nadaf–Rahrov before concluding that no reasonable accommodation was

18  possible.").

19       Indeed, because of its factual similarity to the present case, Plaintiff cites Nadaf-Rahrov in

20  arguing that she is entitled to summary adjudication of her claim for failure to engage in an

21  interactive process. The Court cannot summarily adjudicate this claim for plaintiff either,

22  however, because an employer is only required to engage in an interactive process when a

23  reasonable accommodation is available, and there is a triable issue of material fact as dispute about

24  whether a reasonable accommodation was available. "Federal courts applying the ADA have held

25  that an employer may be held liable for failing to engage in the good faith interactive process only

26  if a reasonable accommodation was available, and that the employee bears the burden of proof on

27  this issue." Nadaf-Rahrov, 166 Cal. App. 4th at 979; see also Scotch v. Art Inst. of California-

28  Orange Cnty., Inc., 173 Cal. App. 4th 986, 1018 (2009) ("To prevail on a claim under section

United States District Court
Northern District of California

1   12940, subdivision (n) for failure to engage in the interactive process, an employee must identify a

2   reasonable accommodation that would have been available at the time the interactive process

3   should have occurred").

4         In the following section, the Court analyzes further the evidence concerning whether a

5   reasonable accommodation was available.

6           **B.**       **Disability Discrimination and Reasonable Accommodation**

7         FEHA provides that it is an "unlawful employment practice" for any employer, "because

8   of the . . . physical disability . . . of any person . . . to discharge the person from employment . . . or

9   to discriminate against the person in compensation or in terms, conditions, or privileges of

10  employment." Cal. Gov't Code § 12490(a).  To establish a prima facie case of disability

11  discrimination, a plaintiff must establish that (1) she suffered from a disability;[2] (2) could perform

12  the essential duties of the job with or without reasonable accommodations, meaning that she was a

13  "qualified individual"; and (3) was subjected to an adverse employment action because of the

14  disability.  See Green v. California, 42 Cal. 4th 254, 262 (2007); Brundage v. Hahn, 57 Cal. App.

15  4th 228, 236 (1997).

16        Separately, FEHA prohibits "fail[ing] to make reasonable accommodation for the known

17  physical or mental disability of an applicant or employee." Id. § 12940(m).  "An employer or

18  other covered entity has an affirmative duty to make reasonable accommodation(s) for the

19  disability of any individual applicant or employee if the employer or other covered entity knows of

20  the disability, unless the employer or other covered entity can demonstrate, after engaging in the

21  interactive process, that the accommodation would impose an undue hardship." Cal. Code Reg.s,

22  tit. 2 § 11068(a).

23        The elements of a reasonable accommodation claim are similar to the elements of a

24  disability discrimination claim, but "there are important differences." Jensen v. Wells Fargo

25  Bank, 85 Cal. App. 4th 245, 256 (2000).  To establish a reasonable accommodation claim, an

26  employee must show that (1) the employee has a disability under FEHA, (2) the employee is

27

                  

28  [2] Plaintiff's status as a disabled individual is not in dispute.

9

1   qualified to perform the essential functions of the position, and (3) the employer failed to

2   reasonably accommodate the employee's disability.  Scotch, 173 Cal. App. 4th at 1009–10.

3   "FEHA does not obligate an employer to choose the best accommodation or the specific

4   accommodation a disabled employee or applicant seeks"; only a "reasonable" one.  Raine v. City

5   of Burbank, 135 Cal. App. 4th 1215, 1222 (2006).  A reasonable accommodation is "a

6   modification or adjustment to the workplace that enables the employee to perform the essential

7   functions of the job held or desired."  Nadaf–Rahrov, 166 Cal. App. 4th at 974.  Examples include

8   job restructuring, modified work schedules, and reassignment to a vacant position.  "Although the

9   question of reasonable accommodation is ordinarily a question of fact, when the undisputed

10  evidence leads to only one conclusion as to the reasonableness of the accommodation sought,

11  summary judgment is proper."  Raine, 135 Cal. App. 4th at 1227 n.11.

12  In both discrimination and reasonable accommodation claims, the employee must establish

13  that she suffers from a disability covered by FEHA and that she is a "qualified individual."

14  However, for purposes of a reasonable accommodation claim, the third element — "that an

15  'adverse employment action' was caused by the employee's disability — is irrelevant.  Under the

16  express provisions of the FEHA, the employer's failure to reasonably accommodate a disabled

17  individual is a violation of the statute in and of itself."  Jensen, 85 Cal. App. 4th at 256.  See also

18  King v. United Parcel Serv., Inc., 152 Cal. App. 4th 426, 442 (2007) (noting an employer's failure

19  to provide reasonable accommodation is a violation of FEHA, even in the absence of an adverse

20  employment action).

21  Here, Plaintiff asserts *both* that CSK failed to make a reasonable accommodation *and* that

22  she suffered from two adverse employment actions — CSK's unilateral decision to place her on an

23  unpaid leave of absence, and its decision to terminate her employment.  Plaintiff argues that CSK

24  took those actions "because of" her disability, even though she was a "qualified individual,"

25  because it decided to place her on leave and terminate her rather than accommodate her disability;

26  therefore, argues Plaintiff, CSK violated both sections 12490(a) and 12490(m).

27  In general, disability discrimination claims are evaluated using the three-part test for

28  federal discrimination claims set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792

United States District Court
Northern District of California

10

1   (1973), and adopted by the California Supreme Court in the FEHA disability discrimination

2   context in Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354 (2000).  The McDonnell Douglas test

3   implements a burden-shifting regime for summary judgment and trial: first, the plaintiff bears the

4   burden of establishing her prima facie case of discrimination, from which arises a rebuttable

5   presumption of discrimination; the burden then shifts to the employer to provide a "legitimate,

6   nondiscriminatory reason" for the adverse employment action; and the burden then shifts back to

7   the plaintiff to provide evidence that the employer's stated reason for the adverse action was

8   pretextual.  Id.

9        The McDonnell Douglas test "reflects the principle that direct evidence of intentional

10  discrimination is rare, and that such claims must usually be proved circumstantially."  Id. at 354.

11  In a reasonable accommodation case where a plaintiff also alleges an adverse employment action,

12  however, the McDonnell Douglas test is unnecessary, because a failure to make a reasonable

13  accommodation is *direct* evidence of disability discrimination.  Rather, in a reasonable

14  accommodation case where an adverse employment action is at issue, the disability discrimination

15  and reasonable accommodation analyses merge, the general summary judgment burden-shifting

16  standard is used, and the disability discrimination claim depends on the viability of the reasonable

17  accommodation claim coupled with a showing of an adverse employment action.  See, e.g., Nadaf-

18  Rahrov, 166 Cal. App. 4th at 962 (merging analyses; employing traditional summary judgment

19  burden shifting); Lafever v. Acosta, Inc., No. 10-cv-01782-BZ, 2011 WL 1935888, at *4–5 (N.D.

20  Cal. May 20, 2011) (same); Alonso v. Walgreen Co., No. 12-cv-06269-HRL, 2014 WL 243697

21  (N.D. Cal. Jan. 22, 2014) (same); Bultemeyer v. Fort Wayne Cmty. Sch., 100 F.3d 1281, 1283

22  (7th Cir. 1996) (in a reasonable accommodation case, "[t]here is no need for indirect proof or

23  burden shifting," and therefore no need for the McDonnell Douglas test).

24       Thus, where an employer terminates an employee or otherwise takes adverse employment

25  action based on the employer's conclusion that no reasonable accommodation is possible, the

26  adverse action is necessarily taken "because of" the employee's disability.  The only remaining

27  question for the finder of fact is whether the employer's conclusion was correctly made.

28  Therefore, for summary judgment purposes, Plaintiff's disability discrimination and failure to

United States District Court
Northern District of California

11

accommodate claims rise or fall together.

The parties cross-move for summary judgment on Plaintiff's reasonable accommodation claim.  Plaintiff argues that, at the time CSK placed her on a leave of absence, she was entitled to one of three reasonable accommodations: (1) modifications to her former position as a delivery specialist; (2) conversion of her temporary, modified cashier position into a permanent one; or (3) reassignment to certain vacant positions.  Plaintiff argues she was a "qualified individual" for each of these positions because CSK could have made reasonable accommodations that would have allowed her to perform the essential functions of those positions.

CSK argues that an unpaid leave of absence was a sufficient reasonable accommodation. That argument turns on whether any other accommodation would have been futile, because a leave of absence is a reasonable accommodation only if no other accommodation is "reasonable," or if another reasonable accommodation would have subjected CSK to undue hardship.  See Cal. Code Reg.s, tit. 2 § 11068 ("When an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence.").

### 1.      Delivery Specialist

Plaintiff argues that with reasonable accommodation, she was capable of performing the essential functions of the delivery specialist position.

The job description for an O'Reilly Auto Parts Delivery Specialist lists several "Physical Requirements (in 8 hour workday)," including the ability to sit for five to six hours, bend and stoop for five to six hours, lift twenty-six to sixty pounds for one to two hours, and lightly and firmly grasp for three to four hours.  Crowe Decl., ECF No. 40, Ex. B.  Plaintiff concedes that she cannot lift up to sixty pounds.  In her Complaint, she also states that her "physician could not release her to return to work as a driver."  Compl. ¶ 9.  Nevertheless, Plaintiff argues that CSK could have accommodated her restrictions, which do not implicate essential functions of the delivery specialist position, by providing special equipment, help from co-workers when necessary, and modified routes and driving schedules.

CSK argues that the Court need not consider whether reasonable accommodations may exist that would enable Plaintiff to perform the essential functions of the delivery specialist

United States District Court
Northern District of California

position because CSK already reasonably accommodated Plaintiff's restrictions by placing her in the modified cashier position. This argument is a red herring; had CSK continued to employ Plaintiff in the modified cashier position, she would not have filed this lawsuit. Since she was terminated, however, and did bring suit, the Court is required to consider whether any of the accommodations she seeks would have been reasonable.

CSK next argues that, even with reasonable accommodations, Plaintiff would not have been able to perform the essential functions of the delivery specialist position.

FEHA defines "essential functions" as "the fundamental job duties of the employment position the individual with a disability holds or desires." Cal. Gov't Code § 12926(f). Reasons why a function is essential include: "the reason the position exists is to perform that function," there is a "limited number of employees available among whom the performance of that job function can be distributed," and "the incumbent in the position is hired for his or her expertise or ability to perform the particular function." Cal Gov't Code § 12926(f)(1)(A)–(C). "'[A]n employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description.'" Cripe v. City of San Jose, 261 F.3d 877, 887 (9th Cir. 2001) (quoting Echazabal v. Chevron USA, Inc., 226 F.3d 1063, 1071 (9th Cir. 2000)). Evidence of whether a particular function is essential includes, but is not limited to, the following:

> (A) The employer's judgment as to which functions are essential.
> (B) Written job descriptions prepared before advertising or interviewing applicants for the job.
> (C) The amount of time spent on the job performing the function.
> (D) The consequences of not requiring the incumbent to perform the function.
> (E) The terms of a collective bargaining agreement.
> (F) The work experiences of past incumbents in the job.
> (G) The current work experience of incumbents in similar jobs.

Cal Gov't Code § 12926(f)(2)(A)–(G).

CSK argues that its job description sets forth the essential functions of each position, and that Plaintiff could not have performed the essential functions of the delivery specialist position because one of the essential functions is lifting up to sixty pounds. Plaintiff rebuts this argument

1   with substantial evidence suggesting that, in fact, a reasonable accommodation might have enabled

2   her to perform the essential functions of the position.[3]

3          First, in her declaration, Plaintiff avers that, while she was a delivery specialist, "[a]t most

4   I would spend approximately fifteen minutes continuously sitting in car between getting out for

5   my next stop.  Most of the time, the drives to do a delivery or pick-up were within five miles of

6   the San Mateo store, that is, the vast majority of the time, I drove no more than five miles each

7   direction as to each pick-up or delivery." Capote Decl. ¶ 1.  In addition, Plaintiff avers: "during

8   my work as a driver, at least 80–90% of the parts . . . were small such as brake pads, belts, filters,

9   tune-up parts, and hoses which weighed less than five pounds." Id. ¶ 2.  "When I had to pick up or

10  deliver heavy items, I used a cart or someone would help me with the item." Id.

11         Sergio Lizarraga, a delivery driver at the San Mateo store whose supervisor was also Cesar

12  Mendoza, testified that that "sometimes, but not very often at all," he would drive forty-five

13  minutes to pick up parts, and that typically he would drive less than fifteen or twenty minutes.

14  Murphy Decl., Ex. C, Lizarraga Dep. 15–18.  He also testified that the parts he would deliver

15  ranged from less than twenty grams to twenty to thirty pounds in weight. Id. 16:15–18.

16  Sometimes there were days when Lizarraga would not lift anything over twenty pounds; other

17  days, he would be called to lift that much weight two or three times. Id. 21:10–14.  Most

18  significantly, from August 2011 to February 2012, Lizarraga was restricted[4] to lifting no more

19  than "fifteen or twenty pounds."  During that time, co-workers helped him with heavier lifting.

20  On the customer end of the route, customers would help him unload his delivery vehicle. Id.

21  22:9–23:25; 30:1–31:5.  Mendoza testified that Lizarraga was further accommodated during this

22  time by assigning only lighter parts to Lizarraga for delivery.  Mendoza Dep. 55:1–56:25.

23         District Manager Alex Trigueros testified that the delivery radius for delivery specialists

24

_____

25  [3] CSK argues that a lift jack would not have helped Plaintiff perform her job duties, that Bay Area
    traffic results in longer delivery routes, and that delivery specialists must be able to crouch.  But
26  CSK cites no evidence in support of these assertions.

27  [4] CSK stresses that Lizarraga's "restrictions" were self-imposed and not imposed by a doctor.  The
    distinction is irrelevant.  What *is* relevant is that CSK accommodated Lizarraga's restrictions,
28  regardless of by whom they were imposed.

United States District Court
Northern District of California

was "four or five miles" from the San Mateo store.  Murphy Decl., Ex. F, Trigueros Dep. 17:11–

17.  He also testified that drivers would exceed that limit "once or twice a week."  Id. 17:22–24.

In addition, "at least twice a week on an average" a driver from the San Mateo store would exceed

the radius and drive to San Jose, forty to forty-five minutes away, to pick up parts.  Id. 65:9–23.

Trigueros also testified that employees use a lift jack to load heavier items into delivery vehicles,

and that the driver would use a lift jack or other equipment on the other end of the route, as most

deliveries were from one shop to another, or to a warehouse.  Id. 24:1–25:13.  Trigueros further

testified that drivers did not typically sit for more than thirty minutes, and that CSK could have

accommodated Plaintiff's lifting restrictions by having "someone else carry the part to the vehicle,

not have that person lift that 30 pounds."  Id. 50–53.  However, Trigueros also testified that

accommodating Plaintiff's thirty-minute standing restriction "would have been a challenge."  Id.

53:21.[5]

　　　　From this evidence, the Court concludes that there is a triable issue of fact whether

Plaintiff could have performed the essential functions of the delivery specialist position with

accommodation.

### 2.　　　Cashier Position

　　　　In the alternative, Plaintiff argues that in December 2010, rather than placing her on an

unpaid leave of absence, CSK should have converted Plaintiff's modified cashier position into a

permanent one.

　　　　"California law is emphatic that an employer has no affirmative duty to create a new

position to accommodate a disabled employee."  Raine, 135 Cal. App. 4th at 1224.  Specifically,

"an employer is not required to create light-duty positions for purposes of accommodating a

disabled employee unable to perform the essential functions of the position for which he or she

was hired," and "an employer who has created such a temporary assignment has no duty to

---

[5] Trigueros also testified that he understood from "corporate" during the "CSK days" that an employee had to be cleared by a physician "to be 100 percent ready to come back to their position as they left it."  Id. 38:15–39:4.  Plaintiff claims Mendoza told her that was CSK's policy as well. In briefing, CSK disclaims that it has any such policy.

United States District Court
Northern District of California

1    transform that accommodation into a permanent position once it is informed the employee's

2    disability has become permanent."  Id. at 1224; see also Watkins v. Ameripride Servs., 375 F.3d

3    821, 824 (9th Cir. 2004) (employer not required to create full-time special delivery position that

4    did not previously exist).

5           In Raine, a police officer was placed on front-desk assignment while he was recovering

6    from his injuries.  Ordinarily, the front-desk position was staffed with civilian "police technicians"

7    and as a temporary light-duty assignment for police officers recovering from injuries.  The police

8    officer remained in that position for six years until his physician advised him he was permanently

9    disabled.  The department and the officer then engaged in an interactive process to determine

10   whether the department could make a reasonable accommodation.  The department concluded it

11   did not have any vacant positions for a sworn police officer with the plaintiff's qualifications and

12   physical limitations.  Importantly, the officer informed the department he did not want to be

13   placed in a "police technician" position at the front desk because he would lose his sworn officer

14   retirement benefits.  Instead, he demanded an accommodation in the form of converting the

15   temporary front desk position for sworn officers into a permanent one.  Raine, 135 Cal. App. 4th

16   at 1218–19.

17          This case is not distinguishable from Raines or Watkins.  Thus, although the Court will

18   deny CSK's motion for summary judgment on Plaintiff's reasonable accommodation claim for the

19   reasons stated elsewhere in this order, Plaintiff may not be heard to argue that CSK was obligated

20   to make the temporary cashier position permanent.

21                  **3.       Other Positions**

22          Under the FEHA, "[i]f the employee cannot be accommodated in his or her existing

23   position and the requested accommodation is reassignment, an employer must make affirmative

24   efforts to determine whether a position is available."  Cuiellette v. City of Los Angeles, 194 Cal.

25   App. 4th 757, 766–67 (2011) (quoting Spitzer v. The Good Guys, Inc. 80 Cal. App. 4th 1376,

26   1389 (2008).  CSK does not dispute that it was required to search available vacant positions for

27   which Plaintiff may have been qualified prior to placing her on a leave of absence.  CSK contends,

28   however, that Plaintiff was not qualified for any position she now says she could have taken —

United States District Court
Northern District of California

16

United States District Court
Northern District of California

including "Parts Specialist," "Retail Specialist," and "Merchandiser" — because an essential function of each position is that the employee be able to lift up to sixty pounds.  CSK relies heavily on its job descriptions in making this argument.[6]

Although CSK now takes that position in its brief, however, the record contains no evidence that CSK ever actually considered placing Plaintiff in another vacant position at the time of her employment.  Ms. Cummings testified that, in concluding no accommodation could be made in late 2011, she did not consider placing Plaintiff in other positions.  Cummings Dep. 44:8–11.  Even then, almost a year had gone by since Plaintiff had been placed on unpaid leave.  California regulations required CSK to do so: "As a reasonable accommodation, an employer or other covered entity shall ascertain through the interactive process suitable alternate, vacant positions and offer an employee such positions, for which the employee is qualified."  Cal. Code Reg.s tit. 2 § 11068(d)(1).  CSK failed to comply with this requirement, as it unilaterally terminated the interactive process in December 2010; it maintains now that any attempt at finding a vacant position would have been futile because Plaintiff could not have performed the position's essential functions.

Moreover, Plaintiff has presented evidence that she could have performed the positions she now identifies if she had been given reasonable accommodation.  For example, Trigueros testified that CSK could have accommodated Plaintiff's lifting restrictions in the parts specialist position and that accommodating her thirty-minute sitting requirement "would have been a challenge" because parts specialist spend hours on their feet, but that it would not have been impossible.  Trigueros Dep. 54:23–55:25.  With respect to the parts specialist position, CSK states that Plaintiff may have been required to take a specialized test to qualify for the position, but does not explain why the test would have served as an obstacle to Plaintiff's performing the position.

---

[6] An employer "is relieved of the duty to reassign a disabled employee whose limitations cannot be reasonably accommodated in his or her current job only if reassignment would impose an 'undue hardship' on its operations or if there is no vacant position for which the employee is qualified."  Id.  CSK has not presented any evidence to support its hardship defense, and the Court does not discuss it further.

### 4.     Leave of Absence and Termination

The Court has already concluded that a genuine issue of material fact remains as to whether CSK's decision to place Plaintiff on a leave of absence in December 2010 constituted a failure to reasonably accommodate Plaintiff in violation of FEHA.  CSK argues that, regardless of its decision to place Plaintiff on a leave of absence, its decision to terminate her employment was justified because Plaintiff could be deemed to have abandoned her employment.  The Court is not persuaded.

Plaintiff was initially placed on leave by CSK in December 2010.  Shortly thereafter, she asked CSK whether "there is anything I can do to continue to work here," and she made the same inquiry at least twice more while she was on leave.  CSK never responded.  Instead, eleven months after placing her on leave, CSK sent a letter that Plaintiff may not have received initiating an interactive process, and then CSK terminated her shortly thereafter.  On the foregoing facts, viewed favorably to Plaintiff, she cannot be said to have abandoned her job, and Defendant's authorities are inapposite.  See Brundage v. Hahn, 57 Cal. App. 4th 228, 238 (1997) (employee requested leave and never returned); Hanson, 74 Cal. App. 4th at 229 (employer offered a reasonable accommodation, which the employee refused; thereafter, the employee failed to report to work).

In conclusion, because there remain genuine issues of material fact on Plaintiff's reasonable accommodation and disability discrimination claims, the Court will not grant summary judgment in favor of either party on those claims.

### C.     Retaliation

FEHA makes it unlawful for any employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden [by FEHA] or because the person has filed a complaint, testified, or assisted in any [FEHA] proceeding."  Cal. Gov't Code § 12940(h).  To demonstrate a prima facie case for retaliation, "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).  If the defendant offers a

1  sufficient non-retaliatory reason, the plaintiff loses the presumption of retaliation and must prove

2  intentional retaliation.  <u>Id.</u>

3      CSK moves for summary judgment on the ground that requests for reasonable

4  accommodation are not a "protected activity" within the meaning of FEHA.[7]  A recent California

5  Court of Appeal has held that requests for a reasonable accommodation do not constitute

6  "protected activity":

7          [W]e find no support in the regulations or case law for the
           proposition that a mere request — or even repeated requests — for
8          an accommodation, without more, constitutes a protected activity
           sufficient to support a claim for retaliation in violation of FEHA.
9          On the contrary, case law and FEHA's implementing regulations are
           uniformly premised on the principle that the nature of activities
10         protected by subdivision (h) demonstrate some degree of opposition
           to or protest of the employer's conduct or practices based on the
11         employee's reasonable belief that the employer's action or practice is
           unlawful.

12 <u>Rope v. Auto-Chlor Sys. of Washington, Inc.</u>, 220 Cal. App. 4th 635, 652–53, <u>rev. den'd</u> (Jan. 29,

13 2014).

14      In response, Plaintiff relies on the following passage from <u>Coons v. Sec'y of U.S. Dep't of</u>

15 <u>Treasury</u>, 383 F.3d 879 (9th Cir. 2004): "Coons was engaged in a protected activity when he

16 requested that the IRS make reasonable accommodations for his alleged disability.  Coons also

17 suffered an adverse employment action when he was demoted."  <u>Id.</u> at 887.  In <u>Coons</u>, however,

18 the Ninth Circuit was interpreting the federal Rehabilitation Act, 29 U.S.C. § 794, not FEHA.

19 Also, the plaintiff in <u>Coons</u> alleged he was demoted after he requested a reasonable

20 accommodation, was refused, and then filed a Whistleblower Protection Act complaint, only after

21 which he was demoted.  No such facts are present here.  Similarly, <u>Barnett v. U.S. Air, Inc.</u>, 228

22 F.3d 1105, 1121 (9th Cir. 2000) <u>vacated</u> <u>sub</u> <u>nom.</u> <u>on</u> <u>other</u> <u>grounds</u> by <u>U.S. Airways, Inc. v.</u>

23 <u>Barnett</u>, 535 U.S. 391 (2002), was evaluating an ADA claim for retaliation.

24      Here, <u>Rope</u> controls Plaintiff's FEHA retaliation claim.  Because a request for reasonable

25

26

27 _____

   [7] Plaintiff concedes that she cannot present evidence establishing a genuine issue of material fact
28 with respect to her claim that CSK terminated her because it learned that she had filed a complaint
   with the DFEH.  ECF No. 57 at 21.

United States District Court
Northern District of California

accommodation does not constitute protected activity, the Court will grant summary judgment in CSK's favor on Plaintiff's retaliation claim.

### D.      Failure to Prevent Discrimination

FEHA prohibits an employer from "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov't Code § 12940(k).  CSK concedes that "Plaintiff's failure to prevent discrimination claim stands or falls with her discrimination claim."  ECF No. 38 at 21.  Accordingly, the Court will deny CSK's motion for summary judgment on Plaintiff's failure to prevent discrimination claim.

### E.      Wrongful Termination in Violation of Public Policy

As Plaintiff acknowledges, California Labor Code section 132a can no longer serve as a basis for her tort claim following the decision in Dutra v. Mercy Medical Ctr., 209 Cal. App. 4th 750 (2012).  However, Plaintiff's claim for wrongful termination in violation of public policy still survives summary judgment if she is able to proceed on her FEHA claim, because violation of the FEHA "violates a 'substantial and fundamental' public policy."  City of Moorpark v. Super. Ct., 18 Cal. 4th 1143, 1160–61 (1998); see also Cal. Gov't Code § 12920 ("It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability . . . .").

Because the Court will deny summary judgment on Plaintiff's reasonable accommodation claim, it must also deny summary judgment on Plaintiff's claim for wrongful discharge in violation of public policy.

### F.      Punitive Damages

In California tort actions, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."  Cal. Civ. Code § 3294.  California law also supports the award of punitive damages for violations of FEHA.  Myers v. Trendwest Resorts, Inc., 148 Cal. App. 4th 1403, 1435 (2007).  Here, Plaintiff has put at issue only the malice element.  "'Malice' means conduct which is intended by the

United States District Court
Northern District of California

defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). Plaintiff asserts that CSK acted with "conscious disregard" to her statutory and common law rights in a manner that constitutes malice and therefore entitles her to present the issue of punitive damages to the jury.

"In the usual case, the question of whether the defendant's conduct will support an award of punitive damages is for the trier of fact, 'since the degree of punishment depends on the peculiar circumstances of each case.'" Spinks v. Equity Residential Briarwood Apartments, 171 Cal. App. 4th 1004, 1053 (2009) (quoting Hannon Engineering, Inc. v. Reim, 126 Cal. App. 3d 415, 431 (1981)). Here, the Court concludes that this is the "usual case" in which the question of punitive damages should be reserved for the jury. The Court cannot conclude, as CSK urges it to, that no reasonable jury could find that CSK acted with "conscious disregard" to Plaintiff's rights. In particular, the Court finds that CSK's unilateral decision to place Plaintiff on an unpaid leave, followed by its failure to engage in an interactive process for eleven months even while Plaintiff made further inquiries, is sufficient evidence to lead a reasonable jury to conclude that CSK acted with conscious disregard to Plaintiff's right to a reasonable accommodation. There is no evidence in the record that CSK undertook any efforts prior to November 2011 to determine whether an accommodation short of unpaid leave may have been sufficient. Nor is there evidence in the record that, once CSK did begin to evaluate Plaintiff's permanent restrictions for an accommodation, it considered placing her in any position other than the delivery specialist position.

CSK's motion for summary judgment as to Plaintiff's claim for punitive damages is denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby GRANTS CSK's motion for summary judgment on Plaintiff's retaliation claim pursuant to Cal. Gov't Code § 12940(h). CSK's motion

/ / /

/ / /

/ / /

United States District Court
Northern District of California

is DENIED in all other respects.

Plaintiff's cross-motions for summary judgment on her claims for failure to reasonably accommodate and failure to engage in the interactive process are DENIED.

**IT IS SO ORDERED.**

Dated:  April 21, 2014



JON S. TIGAR
United States District Judge